Appeal 13-1877 Anthony Rodriguez v. Greg Gossett Good morning. Good morning, Your Honors. May it please the Court, Your Honors. The only issue before this Court relates to prejudice. It has already been determined by the Illinois Appellate Court that Mr. Rodriguez's trial defense counsel is constitutionally deficient. The only issue before this Court right now is whether the Illinois Appellate Court was unreasonable in determining that Mr. Rodriguez's defense counsel's incompetent performance did not prejudice him. Clearly, it did. We need to look at the entire exchange that occurred at the close of trial, what happened between defense counsel, the trial judge, and the prosecutor. It's key to look at the context of what happened. The exchange occurred when the prosecutor alluded to testimony that was adduced to trial, that Mr. Rodriguez was allegedly doing laundry the day after the alleged incidents. The prosecutor said, why would you wash clothes on a Sunday like that if you wash them all night? It is a good reason to get rid of the evidence that way. Now, in direct response to that, then defense counsel said, I would strongly object to the argument about washing clothes, getting rid of the evidence. Counsel knows that there was sperm on various items that was not presented. Now, after that was said, the trial judge told defense counsel, if you want to make an argument, but defense counsel made no such argument, and in fact, he did not again ever refer to the unpresented sperm evidence. Look, given that no one indicated what the evidence, I'll call it the DNA evidence, actually showed, what reason do we, must we have that the jury necessarily would have assumed it inculpated Mr. Rodriguez? I mean, I certainly agree it's a possible inference. Of course, it's a possible inference, but especially given the context in which the remark was made and the fact that it was defense counsel who was making it, isn't it possible that the jury could have surmised it was exculpatory or inconclusive? Your Honor, I would say when you look at the context of the remarks, in fact, the jury would have had the clear inference that this evidence was inculpatory, not exculpatory or even neutral. It's key to see that the deficient comments were made in direct response to what the prosecutor said that Mr. Rodriguez was up all night destroying the evidence. In direct rebuttal to this, that is when defense counsel said, essentially, Your Honor, counsel knows that's not true because there was sperm evidence at the alleged crime scene. The import of this is that sperm belonged to Mr. Rodriguez, not that it was somebody else's sperm. Why would the jury infer that the defense attorney was undermining his client's own case? Your Honor, to that I would say that a jury can understand that the defense counsel can make a one-time mistake that perhaps he said something he shouldn't, he let the cat out of the defense counsel would allude to a piece of evidence, a key piece of evidence, but then not say anything about it that was helpful. That gives a clear import that there was, this was a speaking silence, that there was nothing helpful to say about this unpresented sperm evidence. More than once, defense counsel had the opportunity to say something, anything at all, to explain this unpresented evidence. Well, it would have been grossly improper for the defense attorney to start making an argument. So to the extent that you're relying on this speaking silence argument that, you know, because he didn't go further and say, and by the way, the DNA exculpated my client, or at least excluded him, if it didn't exculpate him from the crime, it excluded him as the contributor of the DNA. Your Honor, that's the more basic problem here, is that nobody followed up on the DNA. Your Honor, I would say that once defense counsel alluded to these unpresented evidence, he should have asked the trial judge for leave to present the exculpatory DNA report. It's too late. We're in argument. Isn't that really, I have to say in reviewing your briefs, I was left with the distinct impression that you would really like to be here, arguing that it was ineffective assistance of counsel not to present the DNA evidence for the defense, but you realize that you can't do that now, and so you're trying to, in a sense, bootstrap it in through this other argument based on the explanation during closing arguments, and that's a little bit of a concern for me, that I sense you're trying to get in through the back door an argument that you wish had been preserved earlier in the case and the proceedings. Your Honor, this argument takes at face value that the report was not presented. It focuses solely on the affirmative misstatements of defense counsel, the allusion to the unpresented sperm evidence. A jury upon hearing this, at a minimum, would take this evidence as corroborative of what K.O. said at trial. There was physical evidence now supporting her account, and that's crucial in a case where it was a credibility contest, as the state admits, between Mr. Rodriguez and K.O. Now it was not just a he-said-she-said story. There was physical evidence, and it's crucial to realize that the state did not present any physical evidence, none whatsoever, at trial that linked Mr. Rodriguez to these alleged events, but once defense counsel alluded to this unprecedented evidence, even if you would assume that the jury would not assume it's inculpatory, at a minimum, it was corroborative of K.O.'s account. Is there any curative instruction that the judge could have given that would have prevented the need for a mistrial at that point? Your Honor, given the magnitude of this error, it's hard to conceive that a curative instruction could indeed have corrected this. This court has said so much in the recent case of Mouse v. Baker to doubt the efficacy of instructions, but the key point here, too, is that the trial judge, far from giving a curative instruction, he gave the opposite. He told defense counsel, if you have an argument to make, make it to the jury. This would have given the jury the impression, at least, that it was okay to discuss the sperm evidence, and perhaps would have given the impression that more should have been said about this evidence. It would have highlighted the importance of this unprecedented evidence in the jury's mind, and overwhelmed everything that happened before a trial. Well, the jury was given instructions at several points along the way that anything the attorneys say is not evidence. That's correct, Your Honor. However, given the magnitude of this prejudice, there was no specific curative instruction to tell the jury not to pay attention to this game-changing piece of evidence, physical evidence, that had not been adduced at trial. Well, there isn't any evidence, so to refer to it as evidence is wrong. It's a statement, an errant statement by the defense attorney, which was found to be deficient performance by the state courts. It was ambiguous in context, and this is in the mid-1990s, as I understand it, right? So this is just at the advent of DNA testing in these cases, so the jury wouldn't come to court with some suppositions about forensic evidence in contrast to perhaps today. So, you know, considering the context and the deferential standard of review, we're here on habeas review about whether the state court's no prejudice finding is reasonable. It seems to me you've got a tough hill to climb here. Your Honor, I agree that the standard is is a high one, but it's not an impossible standard to meet, and in this case, I think given the context, the jury would have seen that this was inculpatory. The statement alluded to inculpatory evidence that was not presented. A jury would wonder, why was this evidence not presented? It's possible for a jury to understand that evidence is sometimes suppressed for certain reasons, perhaps the legal technicality fiction so prevalent in the media, but a juror would not think that defense counsel could have said something helpful and then not set it, or at least try to ask the court for eliminating instruction, anything at all to show that he made an error in making this statement. Thank you. Thank you, Your Honor. Thank you, Mr. Levin. Come on up. I've got all my old friends here today. Thank you, Your Honor. I'm Assistant Attorney General Eric Levin on behalf of the respondent, Warden Gossett. I'd like to start with some common ground between myself and opposing counsel. I absolutely agree with him that the only issue in this case is whether the State Appellate Court's holding that there was no reasonable probability that there would have been a different result absent this comment. The only question here is whether that was objectively unreasonable under the AEDPA, and I just don't see how we can make that conclusion here. My opposing counsel towards the end of his argument, I think in answer to a question, said that there essentially was no curative instruction that could have been given here that would have ameliorated the effect of counsel's comment, and I think that concession right there would essentially take the exception. So the presumption is that curative instructions work, and there's an exception for that for cases, rare cases, where there's an overwhelming probability that because the comment was just so powerfully damning, a jury couldn't follow the instruction not to consider it. And I think to say here that there's no curative instruction here that could have been given would have had the exception swallow the rule. You know, the Illinois Appellate Court found that it was ineffective for Mr. Rodriguez's counsel to mention the DNA evidence precisely because the jury might infer that the evidence inculpated Mr. Rodriguez. So in evaluating prejudice, shouldn't we assume that that is exactly the inference that the jury drew? No, I don't think so, because I think that would essentially collapse the two, the deficiency prong and the prejudice prong into one. So certainly it was deficient, one, it was just improper to make reference to evidence that hadn't been admitted. So that's improper, and it is true that the comment, when viewed in isolation, did, I think the language the State Appellate Court used was it allowed for the inference to be drawn. And so we're not contesting that the State Appellate Court here found deficiency, that's not an issue. The question now is, is there a reasonable probability that had the comment not been made, the result of the trial would have been different? And so I think when looking at that, what we want to ask ourselves is not, you know, in a vacuum what inferences could be drawn, but what inferences were likely to be drawn. And I think for that, you want to look at the context in which the statement was made. As Your Honor noted, it was a comment by defense counsel that the State objected to. And so the jury here, here's a comment which at worst was just ambiguous. It mentions that there was sperm on various items that hadn't been presented, but it says nothing about where the sperm came from, where the sperm was found, what the significance of that evidence for the case was. So at... Well of course they just heard that Rodriguez is busy all night doing laundry. And again, well I mean the jury could perhaps have drawn the inference that he washed all the evidence, he washed the evidence where he had, you know, that did inculpate him, and he left this. But I mean, I think we're getting a lot into trying to get into the jury's head here. And what we do know is the jury deliberated for maybe 35 minutes. If they had considered this, you would expect that they would have been have, they would have had to parse the comment just like we're doing right now. What does this comment mean? And then certainly the jurors would have asked, you know, as Strickland says, we have to assume that the jurors are conscientiously applying the law and we even consider this. I have to say, I'm not quite as convinced as you are, but it's an ambiguous statement because it seems to me that there are two possible defense arguments here in this case. One is that nothing happened over that weekend and that for whatever reason the victim is either making up a story or suffering some residual effects from what happened to her when she was two and nothing happened. And the other is that something happened but this defendant didn't do it. Wouldn't the mere presence of sperm, regardless of the results of the DNA test, tend to knock out the first option? In other words, tend to, in most jurors' minds, knock out the option that nothing happened? Because you wouldn't normally expect to find any sperm at all on any items relating to an 11 year old girl. Well, first of all, I think this does get to one ambiguity and the comment is that the lawyer didn't say where the sperm was found. He just said sperm on various items. So that's one ambiguity. And on the second point, I think the jury likely rejected any suggestion that this injury that the doctor identified happened when Kao was two. I mean, there was really no basis for concluding that that a doctor couldn't distinguish between an injury that happened to a two-year-old, you know, nine years later versus what's more reasonable is to say the doctor couldn't say, did this happen in May? Did it happen in January? Was that the doctor's testimony? It wasn't clear from the record that somebody had actually asked, is it possible that this injury happened when Kao was two? That's true. Neither side really sort of keyed in on that and clarified it. And so I think in light of the fact that it was open-ended and not clear, the jury could use its common sense. I mean, because there was no medical evidence that would contradict the common sense in that case. Well, that's the whole import of the cross-examination, though, is that the doctor can't establish a date of the injury. And we do have evidence that she was sexually assaulted at the age of two. Well, there was evidence that she suffered sexual abuse at age two, but there was no testimony about what it entailed. And the mother did testify that she had never had any sort of medical treatment or had complained about something like this before. So I think the inference to draw from that is that whatever happened to her at age two was not this type of It's not the only inference that can be done. The contrary inference is perfectly reasonable. Certainly, certainly. And but I think what I sort of bring it back to what I talked about at the beginning, the question here is did the State Appellate Court, looking at all these factors, looking at the strength of the evidence, looking at the nature of the comment, was it ambiguous versus wasn't it, looking at the curative instructions, did the State Appellate Court reasonably apply the Supreme Court's clearly established law, which says that in general the follow their instructions and that it's only in that rare case where we we sort of say we we don't follow that presumption. And here the only question is was it objectively unreasonable to say that this case was not one of those rare exceptions? I know you're in your rebuttal time, but with respect to the curative instruction that was given, given that the problematic comment came from Defense Counsel outside of either opening statements or closing arguments and the curative instruction was directed towards disregarding things made in opening statements or closing arguments, is it really fair to say that the curative instruction was directed to what Defense Counsel said? Well, I think that's certainly, I mean, I don't think we should sort of overly parse the language when we're looking what would the jury reasonably do. And so here it's not just that they got that one instruction. They had sort of been instructed throughout the trial at many different points, opening statement, before the closing arguments, and then again in jury instructions, not only that just what's said in closing argument is not evidence, but really that the only evidence there to consider is what they heard on the witness, from the witnesses on stand or the exhibits that were admitted. So they sort of, even without that specific instruction, they sort of had this general framework of you don't consider what the lawyers say. Oh, you know, you only consider it to the from the witnesses. And so I think in light of that, you know, it's, I think the more reasonable conclusion here is that they did understand this comment as reiterating. I mean, the judge sort of prefaced that specific curative instruction with a, as I've already told the jury. So I think he was sort of referring back to the instructions he had previously given and would give again. Before you sit down, what time period was the school administrator referring to when he testified about the victim's history of fabrications and lies? I don't think we know specifically. We do know that she had somewhat recently moved to that new school, so it could have been maybe months. I don't want to say a specific date because I just don't know the answer to that off the top of my head. But again, there, the evidence that she had sort of would tell lies, it was limited to what I would call, you know, normal childhood lies, not wanting to take a test, that sort of thing. If anything, the jury had reason to disbelieve Rodriguez rather than KO. Rodriguez not only had committed a past felony, which the jury was specifically instructed that it could consider that as impeaching, but Rodriguez himself, in trying to show that KO would tell lies, told a story that sort of made him seem like the liar. And I think the jury certainly would have found that relevant. If there are no further questions, we would ask the court to affirm the district court's judgment. Thank you. Mr. Jalal, come on back. Thank you, Your Honors. A couple brief points. My opponent admits that context is key in this case, and it is. And it's important to note that the prosecutor was the one that raised the inference that Mr. Rodriguez was destroying evidence, his sperm, from cleaning up the alleged crime scene. It's in this context, then, that defense counsel makes his deficient remarks saying that there was sperm evidence. In this context, the jury would infer that the sperm came from Mr. Rodriguez. Furthermore, this entire context underscores to the jury that before this, there was no physical evidence presented at trial at all. It was a credibility contest. Finally, I've asked the court to look at two cases, Hampton v. Liebach and Harris v. Reed. Those cases go to speaking silences, in which juries, this court has affirmed habeas on the grounds that juries do make negative inferences. Here, they heard that there was sperm, but they didn't hear anything positive about what this sperm was. I think the jury would have reasonably made a negative inference that the sperm came from Mr. Rodriguez, that he did not destroy evidence, but that this was his sperm. Thank you, Your Honors. Thank you so very much. You were appointed, of course, and you have the thanks of the court for the fine representation that Mr. Levenstam always brings to this court. We are really appreciative for what you do. We're always appreciative of you, Attorney General's Office. Thank you. Case will be taken under advisement.